**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**KATHERINE BEAN, on behalf of D.K.S., a minor child** **PLAINTIFF**

**v.** **CIVIL ACTION NO.: 1:26-cv-00027-JMV**

**COMMISSIONER OF SOCIAL SECURITY** **DEFENDANT**

**ORDER AFFIRMING ALJ'S DECISION**

Plaintiff filed an application for disability benefits for her minor son, the claimant, on September 6, 2022. The application was denied at the initial and reconsideration levels and Plaintiff filed a timely request for hearing. The Administrative Law Judge (hereinafter "ALJ") issued an Unfavorable Decision in this cause on February 28. 2025. This case was then appealed to the Appeals Council, and the Council issued a Notice of Appeals Council Action on January 13, 2026, thereby making this case ripe for appeal as Plaintiff has exhausted his administrative remedies

For the reasons that follow, the undersigned finds that the ALJ's decision shall be AFFIRMED.

**Issues:**

Claimant presents the following two issues in her argument:

1) Whether Substantial Evidence Supports the ALJ's Finding that DKS Has a Less-Than Marked Limitation in the Domain of Interacting and Relating with Others; and
2) Whether Substantial Evidence Supports the ALJ's Finding that DKS Has a Less-Than-Marked Limitation in the Domain of Attending and Completing Tasks.

**Procedural History:**

The Claimant was born on March 27, 2014, and was a school-aged child on the date the

application was filed and the date of the ALJ's decision. Plaintiff asserted that Claimant was disabled due to attention deficit hyperactivity disorder (ADHD), bipolar disorder, and unspecified reading issues (Tr. 201).

On September 6, 2022, Plaintiff filed an application for supplemental security income (SSI) on behalf of DKS (Tr. 17, 176). The Agency denied claimant's claim on initial hearing and upon reconsideration (Tr. 17). Plaintiff timely filed a written request for hearing before an ALJ and, in a hearing decision dated February 28, 2025, the ALJ found that DKS was not disabled between the date the application was filed and the date of the decision (Tr. 17-25).

The ALJ applied the three-step sequential evaluation process for childhood SSI claims (Tr. 17-24). For childhood disability claims, the Commissioner follows a three-step sequential evaluation process to determine if: (1) is the claimant engaged in substantial gainful activity; (2) does the claimant have an impairment or combination of impairments that is severe; and (3) does the claimant's impairment or combination of impairments meet, medically equal, or functionally equal a listed impairment in 20 C.F.R. Part 404 Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.924, 416.924(a), 416.925, 416.926.

At step one, the ALJ then found that DKS had not engaged in substantial gainful activity since the application date (Tr. 18). At step two, the ALJ determined that DKS had severe impairments of specific learning disorder in all areas and ADHD (Tr. 18). At step three, the ALJ found that none of DKS's impairments (alone or in combination) meets, medically equals, or functionally equals the listed impairments (Tr. 15-24).

Relevant to this appeal, the ALJ considered whether DKS's impairments or combination of impairments functionally equaled the severity of the listings by considering how DKS functions in six domains of functioning specified by Agency regulation (Tr. 20-25). See 20 C.F.R. §

416.926a(b). The ALJ found that DKS had a marked limitation in domain of understanding, remembering, or applying information, but less-than-marked or no limitations in the remaining domains (Tr. 20). Accordingly, because DKS did not have "marked" limitations in two domains or an "extreme" limitation in one domain, the ALJ found that DKS did not have an impairment or combination of impairments that functionally equaled a listing (Tr. 25). As a result, the ALJ concluded that DKS was not disabled from the application date through the date of the decision (Tr. 25).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). Thus, the Commissioner's decision is ripe for review under 42 U.S.C. § 405(g).

**Standard of Review:**

Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence "is more than a mere scintilla. It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). The Supreme Court has clarified that the threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id*. A finding of no substantial evidence is appropriate only where no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying the substantial evidence standard, the Court must carefully examine the entire record but must refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

**Law and Analysis:**

**Issue 1: Whether Substantial Evidence Supports the ALJ's Finding that DKS Has a Less-Than Marked Limitation in the Domain of Interacting and Relating with Others**

Plaintiff argues that the ALJ erred by failing to find that Plaintiff had at least a marked limitation in the domain of Interacting and Relating with Others. Plaintiff argues that this caused prejudice because if he would have been found to have a marked limitation in the domain of Interacting and Relating with Others, the outcome of the decision would have been altered.

The ALJ stated in his consideration of the domain of interacting and relating with others:

> The claimant has less than marked limitation in interacting and relating with others. The claimant alleged that he has difficulty getting along with others. However, the claimant testified he had friends, but they sometimes aggravated him describing they are rude when he says something and it makes him mad. He relayed he responded by saying rude things back and sometimes throwing and breaking things. He reported he had difficulty with teachers. The claimant's mother testified he got in trouble at school for fighting and he fought with siblings. The medical records described the claimant exhibited unstable mood and frustration tolerance impairment. But improvement with medication adjustments (Exhibits 3F, B6F, B7F). The state agency medical consultants documented that the claimant had less than marked limitation interacting and relating with others (Exhibit 2A and 4A).

(TR 24).

In arguing that the ALJ did not adequately consider the evidence of record in this domain, Plaintiff cites to a prior ALJ hearing decision from January 28, 2022, by this same ALJ, where Plaintiff argues "the evidence was nearly identical to the evidence contained in this current claim." [Doc. 12] at 5. The ALJ stated in the January 28, 2022, opinion:

> In interacting with others, the claimant has marked limitations. Here, the claimant alleged that he has difficulty getting along with others. However, according to his statements, the claimant is also able to get along with others, spend time with friends and family, and live with others (testimony). The medical evidence shows that the claimant struggled with anger and aggression (Exhibits 1E, 2E, 6E, 5F, 6F, and 8F).

(TR 47).

Later in that same hearing decision, the ALJ also found:

> The claimant has marked limitation in interacting and relating with others. Ms. Bean testified that the claimant did not get along with anybody, could not play with anybody, fought with her, his stepdad and sisters ages 4, 5 and 6, and was aggressive. The medical evidence document that the claimant struggled with his anger, relationship with his parents and siblings and was disruptive at school (Exhibits 5F, 6F and 8F). The claimant's teacher reported that the claimant had a slight problem interacting and relating with others (Exhibits 1E, 2E, and 6E). The state agency medical consultants documented that the claimant had less than marked limitation interacting and relating with others (Exhibits 2A and 4A).

(TR 55).

As for record evidence, the Plaintiff then directs the undersigned to consider the following in an effort to establish that the ALJ's current decision is not supported by substantial evidence:

- Mom reports client tried to smother another child with a backpack. Child has a hard time staying on task and does not like to follow directions. (TR 297).
- Problem: BH/Oppositional/Defiance issues: Mom states "when I tell him to do something he just stands there with a blank state like he doesn't hear me" Client displays oppositional behaviors aeb Mom states, "I came out of the store and he was trying to smoother the kid I was babysitting with his backpack". Client has been displaying this behavior for at least one year, which caused client to repeat Kindergarten and create sibling rivalry on a daily basis at home. (TR 311).
- Pt has longstanding hx of problems with excessive impulsivity with hyperactivity and impaired concentration in multiple settings. He is generally disruptive at school and home and often defiant. He has impaired frustration tolerance and is quick to escalate to anger and tantrums when he does not get his way. He has been aggressive at home and destructive of property. He has broken out at least one window at home. No persistent problems with depression or anxiety…(TR 323).
- • Pt continues with severe emotional and behavioral impairments at home and school…(TR 351).
- Pt continues with emotional and behavioral impairments at home and school. (TR 368).

In response, the Commissioner argues that "the record evidence consisted of treatment notes that contradicted much of the extreme social and behaviors described by Plaintiff." [Doc. 17] at 5. The Commissioner acknowledges that "[a]s the ALJ noted, Plaintiff testified that DKS

would get aggravated, frustrated, and mad when told to do something, and that he would fight at school and with his siblings." Id., citing (TR 21, 24, 35-37). However, DKS also testified that he had multiple friends and that he would get along with them "but sometimes people get on my nerves" (TR 24, 38, 423-24).

Additionally, and importantly for purposes of this Court's analysis, the ALJ found that medical records showed improved emotional and behavioral impairments at home and school (TR 404, 479, 503, 527). Examining these records further, the Court notes that on January 10, 2023, the progress note from LifeCore stated, "Improved emotional and behavioral impairments at home and school. He is in 2nd grade with improved grades." (TR 404). Similarly, on October 24, 2023, the note evidenced "[i]mproved emotional and behavioral interactions at home and school. Now in 3rd grade with marginal grades in reading." (TR 479). Similar notations were documented on January 23, 2024 (Tr. 503) and April 16, 2024 (TR 527). The Commissioner further notes that progress notes also indicated that DKS met his social skills therapy goals and that he was able to engage and participate in therapy sessions (e.g. TR 454-55, 458-59, 462-63, 466-67, 470-71, 486-87).

According to the Commissioner, opinion evidence also supported the ALJ's finding because the State agency psychiatric consultants opined that DKS had a less-than-marked limitation in the domain of interacting with others. [Doc. 17] at 6, citing (TR 65-66, 72-73). Likewise, Louis Masur III, Ph.D., a consultative examiner, examined DKS in 2023 and opined that DKS had no difficulty communicating and that he socializes quite well (TR 425). The ALJ found the prior administrative findings to be mostly persuasive and the Dr. Masur's opinion to be persuasive (TR 23).

The Commissioner argues that contrary to Plaintiff's assertion, the evidence for the

preceding claim was not "nearly identical." Instead, as the ALJ expressly noted, more recent data showed that DKS had positive medication benefits (Tr. 21-22, 404, 479, 503, 527). Additionally, the prior ALJ decision did not have the benefit of the current prior administrative findings and consultative examiner's opinion, all of which opined that DKS did not have marked limitation in his ability to interact and relate with others.

While the Commissioner acknowledges the medical records cited by Plaintiff showing behavioral and defiance issues, the Commissioner notes that these cited issues do not negate the evidence that the ALJ cited in support of his conclusion related to a less-than-marked limitation in the domain of interacting and relating to others, such as improvement from medication. As cited *supra*, the undersigned is not permitted to reweigh the evidence; instead, "no substantial evidence will only be found where there is a conspicuous absence of credible choices or no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Credible choices and contrary medical evidence exist as to this issue. Accordingly, the undersigned finds that substantial evidence supports the ALJ's finding that Claimant had a less-than-marked limitation in the domain of interacting and relating to others.

**Issue 2: Whether Substantial Evidence Supports the ALJ's Finding that DKS Has a Less-Than-Marked Limitation in the Domain of Attending and Completing Tasks**

Plaintiff argues that the ALJ erred by failing to find that Plaintiff had at least a marked limitation in the domain of Attending and Completing Tasks. With respect to attending and completing tasks, the ALJ found in relevant part:

> The claimant has less than marked limitation in attending and completing tasks. The claimant alleges that he has difficulty paying attention, listening, following instructions, completing tasks, and reading. By the claimant's statements or actions, he can perform simple maintenance, read, watch television, use a computer and smartphone and play video games (Exhibit B3E, B4F, testimony). The evidence indicate that the claimant struggled with staying seated and still, displayed

> inattention and had to be redirected to stay on task, and was hyperactive (Exhibit B6F, p. 16, 15, 64, 72, 76, 89). But when compliant with his medication he did not display inaction, and was able to stay on task without redirection, no hyperactive, remained seated and stayed engaged (Exhibit B6F, p. 8, 12, 20, 24, 28, 40, 44, 48, 68). The State agency medical consultants found the claimant had less than marked limitation in his ability to attend and complete tasks (Exhibit B2A, B4A).

(TR 24).

In her brief, Plaintiff cites to the following in support of a marked limitation as to this domain:

- BH inattention: Duration, Frequency and hot it creates a Limitation: C Mom reports he give the impression he's not listening by "blank stares" when she gives him directions. Client has short attention span and difficulty sustaining attention. Client has been displaying behaviors daily over a year. Behaviors have limited client academically. (TR 311).
- Short attention span, difficulty sustaining attention on a consistent basis. Gives impression that he/she is not listening well. Repeated failure to follow through on instructions or complete school assignments or chores in a timely manner. (TR 315).
- Pt has longstanding hx of problems with excessive impulsivity with hyperactivity and impaired concentration in multiple settings. He is generally disruptive at school and home and often defiant. He has impaired frustration tolerance and is quick to escalate to anger and tantrums when he does not get his way. He has been aggressive at home and destructive of property. He has broken out at least one window at home…(TR 323).
- Pt has no significant medication benefits for management of ADHD and affective symptoms. Concentration and impulse control are not adequate with Quillichew @ 20 mg aAM. Mood is still unstable and frustration tolerance is impaired with medication. No

persistent depression or anxiety. Sleep is a problem with ongoing insomnia…(TR 351).

- Short attention span: difficulty sustaining attention on a consistent basis. Gives impression that he/she is not listening well. Repeated failure to follow through on instructions or complete school assignments or chores in a timely manner. (TR 352).
- Client's mother reports that client displays symptoms of ADHD including being off tasks frequently, appearing to not hear his name when called, not being able to follow through on directions he is given, etc. which has caused problems both at home and school for client. Cl mother reports that he is struggling with both hyperactivity and impulsivity and "cannot rest". She identified that he has difficulty sleeping at night. Cl has previously taken medication for ADHD which helped improve symptoms. Problems occur daily and have been occurring for over the past year. (TR 374).
- CSS will assist cl with seeking out and utilizing available resources for managing ADHD including medical treatment. MS stated "I think he has ADHD he is always bouncing off the walls" (TR 462).
- CL was in a content, talkative mood on this date. He was engaged and participated in the session. Cl was able to utilize appropriate communication and express himself clearly. Ct was able to identify coping strategies that he can utilize if needed to help with his attention and concentration. Cl did state that he took his medication on this date however he continued to struggle with his attention and concentration. Cl did display inattention and had to be redirected to stay on task. Cl did display hyperactivity and struggled with remaining seated, staying in his char. (TR 499).
- At this time, Cl has not made progress towards goals and objectives on his treatment plan. He continues to struggle with his attention and concentration as well as being able to stay

on task without constant redirection. Cl also displays hyperactive and struggles with remaining seated and keeping his hands to himself. St will continue to work with Cl on coping strategies he can utilize to help with his attention and concentration as needed. (TR 543).

- Cl was in a happy, talkative mood on this date aeb him smiling throughout the session. He was engaged and participated in the session however, he did have to be redirected. Cl was able to utilize appropriate communication and express himself clearly. Cl was able to identify coping strategies to utilize to increase his attention and concentration and practiced the coping strategies during the session. Cl was not in compliance with his medication on this date. Cl did display inattention and had to be redirected to stay on task. Cl did display hyperactivity and struggled staying seated. Cl did not make progress towards goals and objective on treatment plan. (TR 552).
- CL was able to complete focusing activity but had to be redirected several times before concentrating. Cl understands why he is practicing this skill and states that sometimes when he is working "things just pop in my head". (TR 592).

[Doc. 12] at 8-9.

Plaintiff argues that "the hearing decision's assessment of this domain is deficient as a matter of law and is not supported by substantial evidence." *Id.* at 9.

In opposition, the Commissioner argues that the ALJ recognized that DKS testified that he has difficulty paying attention, listening, following instructions, completing tasks and reading (Tr. 24, 38-39), Indeed, as the ALJ noted, some medical records showed that DKS struggled with staying seated and still, displayed inattention and had to be redirected to stay on task, and was hyperactive (Tr. 24 citing Tr. 463, 499, 511, 519, 523, 536). However, medical records also noted

that when DKS was compliant with his ADHD medication, he did not display inattention,[1] and was able to stay on task without redirection, was not hyperactive, remained seated and stayed engaged. (Tr. 24 citing Tr. 455, 459, 467, 471, 475, 487, 491, 495, 515). Additionally, DKS also stated that he could perform simple maintenance, read, watch television, use a computer and smartphone and play video games (Tr. 24, citing Tr. 38, 423-24).

In addition to the record evidence, opinion evidence also supported the ALJ's finding. The State agency psychiatric consultants opined that DKS had less-than-marked limitations in the domain of attending and completing tasks (TR 65-66, 72-73). Likewise, Dr. Masur opined that DKS had no difficulty attending to and completing tasks (TR 425). The ALJ found the prior administrative findings to be mostly persuasive and the Dr. Masur's opinion to be persuasive (TR 23).

The Commissioner argues that although the Plaintiff presents some evidence to show that DKS showed poor concentration on some occasions, it does not negate the other evidence showing that DKS had better concentration when compliant with medication. See (TR 24). The undersigned agrees, and finds that this constitutes a request for the Court to reweigh the evidence that the ALJ has already considered. This is not a case where there are no credible choices or alternative medical evidence under *Johnson*, 864 F.2d 343-344. There were mixed examination results, and the ALJ found that DKS's limitation did not raise to the level of interfering "seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i); Biestek, 587 U.S. at 103. Substantial evidence supports the ALJ's finding that DKS only had a less-than-marked limitation in attending and completing tasks.

[1] The Court notes that the ALJ's opinion stated "inaction" but appears to have been a typo for "inattention."

**Conclusion**

For the foregoing reasons, the undersigned finds that the ALJ's decision shall be and is hereby AFFIRMED.

THIS, the 2nd day of November, 2026.

*Jane M. Virden*
UNITED STATES MAGISTRATE JUDGE